UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FRANK A. RAGUSA,

                                  Petitioner,

      - against -

ACME MARKETS, INC.,

                                    Respondent.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-5561 (CS)

Appearances:

Debra Palazzo
Law Offices of Debra Palazzo, LLC
Hawthorne, New York
*Counsel for Petitioner*

Mark Andrew Saloman
Ford & Harrison LLP
Berkeley Heights, New Jersey
*Counsel for Respondent*

Seibel, J.

        Respondent ACME Markets, Inc. ("ACME"), has moved to dismiss Petitioner's

Complaint and confirm a February 26, 2024 Arbitration Award.  (ECF No. 11.)  For the reasons

set forth below, ACME's motion is GRANTED.

## I.    **BACKGROUND**

        I accept as true the facts, but not the conclusions, set forth in the Petition.  (*See* ECF No.

1-1 ("Compl.").)[1]

---

[1] The parties refer to the Petition to Vacate Arbitration Award as the Complaint, so the
Court will do the same.

A.    **Facts**

Petitioner Frank A. Ragusa is a 36-year-old intellectually disabled man whose mental capacity is approximately that of a third-grader.  (Compl. ¶ 11.)  For seventeen years, he worked for Respondent ACME (and its predecessor A&P) in the Bakery Department of its supermarket. (*Id.* ¶ 13.)  As an ACME employee, Petitioner was required to become a member of Local 338 (the "Union"), and the terms and conditions of his employment were governed by the Collective Bargaining Agreement ("CBA") between ACME and the Union.  (*Id.* ¶¶ 4-6; *see generally id.* Ex. A ("CBA").)  Because Petitioner's disability could cause him to be forgetful, his mother, who has a Power of Attorney entitling her to act on his behalf, often facilitated his schedule and other logistics with the Bakery manager.  (Compl. ¶¶ 14, 19.)  Nonetheless, Petitioner was able to maintain regular hours and a clean disciplinary record until May 8, 2023, when the incident giving rise to this dispute took place.  (*Id.* ¶¶ 15-16.)

Petitioner alleges that, while he was working in the Bakery, a regular customer confronted him about the freshness of that day's bagels, even shoving the bagels in Petitioner's face.  (*Id.* ¶¶ 21-23.)  Although Petitioner did not touch the customer at this point, he alleges that shortly thereafter, as he came across the customer again on his way out of the supermarket, he "put his arm around him in an effort to 'make up.'"  (*Id.* ¶¶ 23-25.)  The customer ducked away, and while he did not file a written complaint, ACME claims that he came back the next day and complained about Petitioner's behavior.  (*Id.* ¶¶ 26, 29-30.)  After receiving this complaint, store administrators reviewed video footage capturing the incident, concluded that Petitioner had put the customer in a headlock, and terminated him.  (*Id.* ¶¶ 31-32.)

Before Petitioner's termination was finalized, his Union representative filed a grievance with ACME's Labor Relations Manager, and on May 30, 2023, a grievance meeting was held

between Petitioner, his Union representative, and three store administrators.  (*Id.* ¶¶ 33, 35.)  The Union representative asked that Petitioner's mother be allowed to attend in light of Petitioner's disability, but the manager refused, claiming that Petitioner's disability was not proven.  (*Id.* ¶¶ 33-34.)  At the meeting, Petitioner could not recall the timeline of the incident or where in the store the incident took place.  (*Id.* ¶ 36.)  A second grievance meeting was held on July 14, 2023, and ACME once again denied Petitioner's mother permission to attend.  (*Id.* ¶ 37.)  At this second meeting, Petitioner was still unable to recall the details of the incident, but declined ACME's offer to review the video.  (*Id.* ¶ 39.)  After this meeting, ACME sent Petitioner an official notice of termination for "violation of company policy including Gross Misconduct in the Workplace."  (*Id.* ¶ 41; ECF No. 13-2.)[2]

### B.    Procedural History

The Union filed for arbitration pursuant to the CBA, which provided that employees could only be terminated for just cause and that disputes regarding termination could be submitted to arbitration.  (*Id.* ¶¶ 7, 42; CBA art. 2, art. 23.)  The issue before the arbitrator, as stipulated by the parties, was as follows:  "Did the Company, Acme Markets, have just cause for the discharge of the grievant, Frank Ragusa?  If not, what shall be the remedy?"  (Compl. Ex. B ("Award") at 1.)  At the arbitration hearing, which took place virtually on December 6, 2023, (Compl. ¶¶ 42, 58), both parties called and cross-examined witnesses; the arbitrator viewed the video of the incident multiple times; and Petitioner's Union counsel raised arguments regarding Petitioner's disability, alleged deficiencies in ACME's investigation of the incident, Petitioner's clean disciplinary record, and ambiguity in the policies Petitioner allegedly violated, (*see*

---

[2] The termination letter also stated that Petitioner had violated "the code of business conduct."  (ECF No. 13-2.)

*generally id.* Ex. F ("Hearing Tr.")).  After the hearing and submission of post-hearing briefs, the arbitrator denied Petitioner's grievance on February 26, 2024, finding that his termination was supported by just cause.  (Award at 1, 11, 23.)

In making this determination, the arbitrator analyzed the provision of ACME's Associate Policy Handbook prohibiting violence in the workplace, including "assault unwanted physical contact."  (*Id.* at 8.)  She concluded that, regardless of whether Petitioner intended to put the customer in a "headlock" or otherwise physically harm him, Petitioner subjected the customer to unwanted physical contact when he placed his arm around the customer's shoulder and neck. (*Id.* at 11.)  Based on the policy's plain language, Black's Law Dictionary's definition of "assault," testimony from ACME officials, and past arbitration decisions interpreting the same policy, the arbitrator found that Petitioner had violated the policy.  (*Id.* at 11-13.)  She further noted that Petitioner testified that he was aware of the policy and understood that "you can't put your hands on a customer."  (*Id.* at 13-14.)

The arbitrator also considered the Union's argument that ACME's refusal to allow Petitioner's mother to attend the grievance hearings violated the Americans with Disabilities Act ("ADA") and denied Petitioner due process.  (*Id.* at 17-19.)  Because the only issue before her was whether ACME had just cause to terminate Petitioner, not whether ACME had committed a statutory violation, she clarified that she only addressed this issue to the extent that it impacted the just cause analysis.  (*Id.* at 17-18.)  With this in mind, she found that ACME had the right to hear from Petitioner directly about his recollection of the incident, and that – especially considering that a competent Union representative was present at both meetings to ensure that they were held fairly – ACME's failure to allow Petitioner's mother at the meetings did not

affect their outcome, rise to the level of a due process violation, or otherwise prejudice Petitioner.  (*Id.* at 18-20.)

On June 18, 2024, Petitioner filed in the Supreme Court of the State of New York, Westchester County, a petition to vacate and set aside the arbitration award.  (*See generally* Compl.)  ACME removed the case on July 23, 2024.  (*See* ECF No. 1-2.)  ACME thereafter filed a pre-motion letter in anticipation of its motion to dismiss, (ECF No. 4), to which Petitioner responded, (ECF No. 6).  At the pre-motion conference on September 20, 2024, I granted Petitioner leave to amend the Complaint and set a briefing schedule for the motion.  (*See* Minute Entry dated Sept. 20, 2024.)  Petitioner declined to amend, and the instant motion followed.

## II.    <u>LEGAL STANDARDS</u>

### A.    <u>Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure

---

[3] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### B.   <u>Documents Properly Considered</u>

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents
> attached to the complaint as exhibits, and documents incorporated by reference in
> the complaint. Where a document is not incorporated by reference, the court may
> nevertheless consider it where the complaint relies heavily upon its terms and
> effect, thereby rendering the document integral to the complaint. For a document
> to be considered integral to the complaint, the plaintiff must rely on the terms and
> effect of a document in drafting the complaint[;] mere notice or possession is not
> enough. And even if a document is integral to the complaint, it must be clear on
> the record that no dispute exists regarding the authenticity or accuracy of the
> document, and it must be clear that there exist no material disputed issues of fact
> regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New*

*York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v.*

*Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25,

2021). The Court may therefore consider the documents attached to Petitioner's Complaint. I

may also consider the termination letter, (ECF No. 13-2), which is incorporated by reference or integral, as well as the Code of Business Conduct & Ethics, (ECF No. 13-3), to which that letter refers. But I may not consider texts between Petitioner's mother and someone named Ray who apparently is associated with the Union. (ECF Nos. 13-4, 13-5.)[4]

### III.    DISCUSSION

#### A.    Standing to Challenge the Arbitration Award

Petitioner seeks an order vacating the arbitration award pursuant to New York C.P.L.R. § 7511(b)(1). (*See generally* Compl.) This provision, however, only permits a *party* to the arbitration to seek vacatur. *See* C.P.L.R. § 7511(b)(1); *Wolfinger v. Consol. Edison Co. of N.Y., Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *5 (E.D.N.Y. July 31, 2018). While the arbitration was held to contest Petitioner's termination, only the Union and ACME – not Petitioner – were parties. (*See* Award at 1.) Accordingly, Petitioner lacks standing to seek vacatur, and his claim must be dismissed. *See Joyce v. Consol. Edision Co. of N.Y., Inc.*, No. 22-CV-801, 2022 WL 4096177, at *2 (S.D.N.Y. Sept. 7, 2022) ("An employee whose claims are arbitrated under a collective bargaining agreement between an employer and a union generally does not have standing under Article 75 of the CPLR to vacate the arbitration award, since that employee was not a party to the initial contract under which the arbitration proceeded."); *Wolfinger*, 2018 WL 3637964, at *5 ("Plaintiff was represented in arbitration proceedings by the Union, which initiated the grievance proceeding on his behalf. Defendant and the Union – not Plaintiff – were the parties to the arbitration, and only the Union has standing to seek vacatur of the Award."); *Duffy v. Legal Aid Soc'y*, No. 12-CV-2152, 2013 WL 541521, at *3 (S.D.N.Y. Feb. 12, 2013)

---

[4] I do not consider the texts in connection with Respondent's motion to dismiss, but I do consider them in connection with Petitioner's application to amend.

("Generally, individual employees represented by a union do not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.").[5]

Despite this general rule, an employee can nonetheless challenge the outcome of an arbitration between its employer and its union if the employee can show that the union breached its duty of fair representation. *See Romero v. DHL Express, Inc.*, No. 12-CV-1942, 2013 WL 1311033, at *2 (S.D.N.Y. Apr. 2, 2013); *Tucker*, 451 F. Supp. 2d at 595. This duty, which "derives from the union's statutory role as exclusive bargaining agent," *Wolfinger*, 2018 WL 3637964, at *6, is only breached when the union's conduct toward a member was "arbitrary, discriminatory or in bad faith" and thus "seriously undermined the arbitral process," *Tucker*, 451 F. Supp. 2d at 595. In light of the "wide latitude that unions need for the effective performance of their bargaining responsibilities," courts "must be highly deferential" when analyzing fair representation claims, and "a plaintiff bears an enormous burden in establishing that his union breached this duty." *Joyce v. Consol. Edison Co. of N.Y., Inc.*, No. 22-CV-801, 2023 WL

---

[5] Courts in this Circuit have dismissed similar claims on standing grounds under both Rule 12(b)(1) and Rule 12(b)(6). *Compare Duffy*, 2013 WL 541521, at *1-3 (dismissing motion to vacate for lack of standing pursuant to Rule 12(b)(6)), *and Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 593-95 (S.D.N.Y. 2006) (same), *with In re AMR Corp.*, 598 B.R. 365, 372 (Bankr. S.D.N.Y. 2019) (dismissing under Rule 12(b)(1), which "provides for dismissal for lack of subject matter jurisdiction, including a lack of standing"), *and 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 608 F. Supp. 3d 50, 64 (S.D.N.Y. 2022) (dismissing because "dissatisfaction with the resolution of the arbitration cannot be a legally cognizable injury" and thus cannot sustain Article III standing); *see also Joyce v. Consol. Edison Co. of N.Y., Inc.*, No. 24-931, 2025 WL 303386, at *1 (2d Cir. Jan. 27, 2025) (summary order) (affirming dismissal of plaintiff's petition to vacate arbitration award for lack of standing without addressing which rule applies). As Respondent points out, (*see* ECF No. 12 ("R's Mem.") at 10 n.5), the Second Circuit has noted that "the absence of a valid cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case," *see Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). The Court will thus refer to the Rule 12(b)(6) standard, but the analysis would not change whether the deficiency in Petitioner's Complaint is framed as lack of a cognizable injury or failure to state a valid cause of action.

6098979, at *3 (S.D.N.Y. Sept. 18, 2023), *report and recommendation adopted*, No. 22-CV-801, 2024 WL 1116084 (S.D.N.Y. Mar. 14, 2024), *aff'd*, No. 24-931, 2025 WL 303386 (2d Cir. Jan. 27, 2025) (summary order).  Petitioner cannot meet this burden.

In his Opposition, Petitioner raises several purported breaches on the part of the Union, contending that the Union did not submit the termination letter into evidence; failed to raise certain objections, including to the form or substance of hearsay testimony regarding the customer's complaint; did not insist on Petitioner's mother's presence or otherwise sufficiently stress Petitioner's disability at grievance meetings or the hearing; and consented to a virtual rather than an in-person hearing.  (*See* ECF No. 13 ("P's Opp.") at 11-15.)  Even assuming that the Union erred in making these decisions, however, "tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach."  *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 46-47 (2d Cir. 2017) (summary order) (union's alleged failure to raise objections, introduce evidence, properly cross-examine witnesses, and advance "crucial arguments" did not show "improper intent, purpose, or motive, or egregious behavior" as required to sustain a claim for breach of duty); *see Tucker*, 451 F. Supp. 2d at 596 (union representative does not breach simply by failing "to offer particular evidence or advance arguments that the grievant asserts would support his claim"); *see also Guerrero v. Soft Drink & Brewery Workers Union*, No. 15-CV-911, 2016 WL 631296, at *4 (S.D.N.Y. Feb. 16, 2016) (union counsel's decision to focus on plaintiff's violations of company policy at arbitration hearing rather than alleged unfairness of pre-termination investigatory interview was "plainly insufficient" to allege breach of duty of fair representation).  Petitioner does not allege any Union conduct "remotely approaching the onerous standards of irrationality, unlawfulness or deceit necessary to support a determination that the Union's actions here were

9

arbitrary, discriminatory or taken in bad faith, or that such conduct seriously undermined the arbitral process." *Tucker*, 451 F. Supp. 2d at 595; *see Wolfinger*, 2018 WL 3637964, at *6 ("Simply put, a breach of the duty of fair representation does not arise when the union and the represented party disagree about steps that the union could, or even should, have taken during grievance arbitration; something much more egregious is necessary.").

To the contrary, the Complaint and its attachments demonstrate that Petitioner's Union vigorously represented him and argued in good faith to challenge his termination. Petitioner's Union representative requested and attended two grievance meetings and filed for arbitration, (*see* Compl. ¶¶ 33, 35, 37, 42), and Union counsel raised several arguments in Petitioner's favor both at the hearing and in a post-hearing brief, (*see* Award at 10 (summarizing Union's arguments)). Petitioner's dissatisfaction with the outcome of the arbitration and his disagreement with the Union's strategic decisions cannot support a claim that the Union breached its duty of fair representation. As such, this exception to the standing requirement does not apply, and Petitioner's claim must be dismissed.

## B.    Merits of Petitioner's Challenge

Even if Petitioner had standing to challenge the award, his claims would nonetheless fail. "Where, as here, a dispute is resolved through arbitration in accordance with a CBA, judicial review of a labor-arbitration decision pursuant to such an agreement is very limited." *Roy*, 682 F. App'x at 44; *see Basir v. New Carlton Rehab. & Nursing Ctr.*, No. 13-CV-5726, 2015 WL 5579863, at *4 (E.D.N.Y. Sept. 22, 2015) ("[T]he role of a district court in reviewing an arbitral award is narrowly limited . . . ."); *Romero*, 2013 WL 1311033, at *4 ("[I]t is well-settled that courts play a limited role when asked to review the decision of an arbitrator made pursuant to a grant of authority to interpret a collective bargaining agreement."). "Courts are not empowered

10

to reexamine the merits of an arbitration award, even though the parties to the agreement may argue that the award arises out of a misinterpretation of the contract or a factual error." *Romero*, 2013 WL 1311033, at *4.  "[A] court may vacate an arbitration award only where the award was procured by corruption, fraud or undue means, through partiality, corruption or misconduct by the arbitrator, or where the arbitrator exceeded his power." *Basir*, 2015 WL 5579863, at *4.[6]

### 1.    The Arbitrator Did Not Exceed Her Authority

Petitioner first argues that the arbitrator exceeded her power by considering the reasoning in prior employee misconduct arbitrations in reaching her decision.  (Compl. ¶¶ 45-50.)  He points to Article 23 of the CBA, which provides:  "No decision in arbitration shall constitute a precedent in any subsequent case, and each case shall be considered solely on its merits and shall be based upon the terms of this Agreement."  (*Id.* ¶ 45.)  While it is true that "an arbitrator's authority may be limited by the language that grants that authority, which in this case is the CBA," *Troeller v. Alladeen*, No. 07-CV-965, 2007 WL 2816197, at *4 (E.D.N.Y. Sept. 27, 2007), the Complaint and its attachments do not plausibly support the conclusion that the arbitrator exceeded her authority.

While the arbitrator did allude to several prior arbitration cases in concluding that Petitioner's conduct violated the "Violence in the Workplace Policy," she did not suggest that she was bound by these decisions as precedent.  Rather, she first did so as part of her analysis of the Union's position that "assault unwanted physical contact" required intent to harm.  (*See* Award at 12-13.)  She concluded that it did not, based on the definition of assault.  (*Id.* at 12.) She then rejected, on factual grounds, the Union's argument that in all the instances cited by

_____

[6] These grounds for vacatur are drawn from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as "federal courts often look to the FAA for guidance in labor arbitration cases." *Roy*, 682 F. App'x at 44; *Basir*, 2015 WL 5579863, at *4.

ACME's witness in which ACME had fired the employee, intent to harm had been established. (*Id.* at 12-13.)[7]  Finally, she noted that in another arbitration involving ACME, ACME had maintained, and the arbitrator agreed, that the policy did not require intent to harm.  (*Id.* at 13.) Her analysis of the language of the policy, and her rejection of the Union's argument that it was being applied inconsistently because ACME had previously only invoked it where the employee intended harm, did not rely on the other arbitration as binding or otherwise suggest that the arbitrator felt obliged to rule the same way.

Likewise, in response to Petitioner's argument that progressive discipline rather than termination would have been the proportionate response to his conduct, the arbitrator noted that progressive discipline was not required for serious misconduct, and cited to other cases in which termination for a first offense was upheld.  (*Id*. at 21-22.)  But she then went on to independently analyze whether this was a case in which that result was appropriate, and held that ACME had shown that it was.  (*Id*. at 22.)  There is no indication that the arbitrator felt bound by any other case to conclude that just cause was present here.  "[I]t is established that an arbitrator may look for guidance from many sources, and [her] award is legitimate so long as it draws its essence from the collective bargaining agreement."  *Loc. 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992); *see LaGuardia USA, LLC v. Unite Here Loc. 100*, No. 20-CV-9163, 2021 WL 860376, at *2 (S.D.N.Y. Mar. 8, 2021) ("[A]n arbitrator may rely on more than the bare terms of a collective bargaining agreement and consider, for example, industry customs or past practices.").  Especially

---

[7] Petitioner also contends that the ACME witness should not have been permitted to testify about other employees who were fired for unwanted touching in the workplace, (Compl. ¶¶ 45-50; P's Opp. at 15), but such testimony regarding ACME's zero-tolerance policy – to which no objection was lodged, (*see* Hearing Tr. at 129-31) – was plainly relevant to Petitioner's contention that termination was a disproportionate response to his conduct.

considering that "[o]bjections to an award on the grounds that the arbitrators exceeded their authority are narrowly applied," *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (*per curiam*); *see N.Y. State Fed'n of Physicians & Dentists v. Interfaith Med. Ctr.*, No. 06-CV-3530, 2007 WL 2743708, at *3 (E.D.N.Y. Sept. 21, 2007) ("[T]here exists a powerful presumption that the arbitral body acted within its powers . . . ."), the arbitrator's reference to past cases does not support vacatur.

Petitioner also points out that his termination letter cited "violations of the code of business conduct" as the grounds for his termination, rather than the "Violence in the Workplace Policy" that the arbitrator relied on in her just cause determination. (*See* P's Opp. at 7-8.) Citing no law, Petitioner seemingly contends that the arbitrator was limited to determining whether Petitioner had violated the "code of business conduct," and that she exceeded her authority by considering the alleged violence in the workplace in her just cause termination. (*Id.* at 8.) This is incorrect. "[A]n arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011); *see 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (*per curiam*) ("[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission."). Neither the parties' submissions nor the CBA prohibited the arbitrator from considering the Violence in the Workplace policy; both simply tasked her with determining whether Petitioner had been terminated for just cause, the precise question she carefully analyzed and answered in the affirmative.

Further, the Second Circuit has squarely rejected arguments "focusing unnecessarily on form over substance" in the arbitration context, and it has made clear that the arbitrator should address the "real substance" of the parties' dispute regardless of the precise way in which the parties had previously framed the issue. *See A&A Maint. Enter., Inc.*, 982 F.3d at 869 (rejecting argument that arbitrator was limited to issue as formulated in initial grievance). Regardless of the wording of Petitioner's termination letter, Petitioner, Union counsel and the arbitrator were all clearly aware that his termination resulted from the incident discussed at the arbitration hearing. *See id.* (noting that facts underlying arbitration award were "fully known" to both parties even if not expressly stated in initial grievance). Petitioner's attempt to cast doubt on a final, binding arbitration award based on a mere technicality fails.

**2.        The Arbitration Hearing Was Not Fundamentally Unfair**

Petitioner also takes issue with various procedural and evidentiary aspects of the hearing, including the admission of hearsay and the fact that the hearing was virtual. (Compl. ¶¶ 51-63.) Arbitration hearings, however, need not "follow all the niceties observed by the federal courts." *ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, No. 15-CV-4983, 2016 WL 5475987, at *3 (S.D.N.Y. June 6, 2016). Indeed, "[a]rbitrators are accorded great deference in their evidentiary determinations, and they have substantial discretion to admit or exclude evidence." *Roy*, 682 F. App'x at 45; *see Jiangxo Zhengao Recycled Textile Co. v. Amazon.com Servs. LLC*, No. 24-CV-3434, 2025 WL 834724, at *4 (S.D.N.Y. Mar. 14, 2025). "[E]xcept where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co.*, No. 22-2748, 2023 WL 8253681, at *2 (2d Cir. Nov. 29, 2023) (summary order); *see Kolel Beth Yechiel*

*Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013); *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017).

None of the allegations in the Complaint call into question the "fundamental fairness" of the proceeding. First, "[i]t is well-settled that arbitrators are not required to adhere to the Federal Rules of Evidence, including its proscription against admitting hearsay evidence," *Oilmar Co. v. Energy Transp. Ltd.*, No. 03-CV-1121, 2014 WL 8390659, at *10 (D. Conn. Oct. 6, 2014), and thus reliance on hearsay testimony does not "fall[] within the limited grounds for challenging an arbitrator's decision," *Basir*, 2015 WL 5579863, at *5. This is particularly true here, as the Union's counsel chose not to depose the complaining customer or call him as a witness. *Jiangxo Zhengao Recycled Textile Co.*, 2025 WL 834724, at *4 ("A party is not denied a fundamentally fair hearing if it did not avail itself of the opportunity to be heard by proffering further evidence . . . .").[8] Given that the incident was captured on video, the fact that the arbitrator heard testimony as to what the customer said can hardly be regarded as prejudicial, let alone fundamentally unfair. As for the virtual nature of the hearing, the arbitrator was not required to hold an oral hearing at all, let alone an in-person one. *See Oracle Corp.*, 276 F. Supp. 3d at 29 ("There is also no bright line rule that requires arbitrators to conduct oral hearings."). Petitioner's conclusory statement that "[a]n in person hearing could have allowed the Arbiter a better understanding of the [Petitioner's] mental incapacity merely by observance," (P's Opp. at

---

[8] Petitioner attempts to rely on the Union's decision not to depose or call the customer to support his argument that Union counsel breached the duty of fair representation. (*See* P's Opp. at 13.) As discussed above, however, tactical choices by Union counsel, such as the decision as to what witnesses to call, cannot support a claim for breach. *Tucker*, 451 F. Supp. 2d at 596. There are many reasons why counsel may have chosen not to call this witness – especially where, as here, the encounter was captured on video – and Petitioner may not relitigate his grievance simply because this choice did not produce his desired outcome.

13), does not plausibly suggest that a virtual hearing was fundamentally unfair under the circumstances.

Petitioner also raises various arguments contesting the arbitrator's credibility determinations or suggesting that the arbitrator incorrectly weighed the evidence. (*See, e.g.*, Compl. ¶ 55 ("Petitioner's statement . . . should have been taken as true as there was nobody at the hearing who was competent to testify differently."); *id.* ¶ 56 ("[T]he arbitrator had no credible evidence in which to base a decision as to what happened and should have found for the Petitioner."); *id.* ¶ 63 ("There can be many interpretations of the video and the Petitioner should have been given the benefit of the doubt . . . ."); *id.* ¶ 66 ("The arbitrator also failed to acknowledge that the reason the Petitioner's explanations changed, were confused or did not make sense was his intellectual disability and instead determined that he was not credible.").) "However, it is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-settled that a federal court may not conduct a reassessment of the evidentiary record." *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) (summary order). And even if the arbitrator's decision was contrary to the evidence as Petitioner alleges – which, the Court notes, is doubtful in light of the video evidence[9] and the arbitrator's detailed and well-reasoned opinion – his claim "is without merit because the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." *Id.*; *see Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004);

---

[9] Petitioner included the video as an exhibit to the Complaint. It shows Petitioner putting his arm around the customer's neck and the customer ducking out from under Petitioner's arm. While the contact was sufficiently momentary that the term "headlock" may not apply, the customer's reaction shows that the contact was unwelcome.

*Dolan v. ARC Mech. Corp.*, No. 11-CV-9691, 2012 WL 4928908, at *5 (S.D.N.Y. Oct. 17, 2012).

### 3.    The ADA Does Not Provide Grounds for Vacatur

Petitioner's Complaint and Opposition list several ways in which ACME allegedly violated the ADA, including by refusing to allow Petitioner's mother at grievance meetings, "taking disciplinary actions against [Petitioner] for disability-related conduct," and "fail[ing] to accommodate the [Petitioner] in understanding his mental confusion concerning the time and place of the alleged incident." (*See* P's Opp. at 16-18.)  But Petitioner is not pursuing a claim under the ADA – he is seeking to vacate an arbitration award finding that he was terminated for just cause.  As such, the Court need only address whether the award "draws its essence from the collective bargaining agreement," *see Romero*, 2013 WL 1311033, at *4, not whether ACME committed any statutory violation.

Petitioner also alleges that the arbitrator herself violated the ADA throughout the course of the hearing by determining that Petitioner was not credible rather than attributing his conflicting explanations for his conduct to his disability.  (*See* Compl. ¶¶ 64-73.)  But, as discussed above, "it is the arbitrator's role to . . . assess the credibility of witnesses," *Nicholls*, 204 F. App'x at 43, and Petitioner does not explain how the ADA required the arbitrator – who was aware of Petitioner's condition – to automatically accept his testimony as true.

Nor did the arbitration award reflect "manifest disregard of the law" as Petitioner contends.  To conclude that an arbitrator acted in manifest disregard of the law, a court must find that "(1) that the governing law alleged to have been ignored by the arbitrator was well defined, explicit, and clearly applicable, and (2) that the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Duffy*, 2013 WL 541521, at *3.  The Second Circuit has described manifest disregard of the law as "a doctrine of

last resort," and its use "is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Wallace*, 378 F.3d at 189. Here, Petitioner claims that the arbitrator "refused to apply" the ADA because she only considered ACME's refusal to allow Petitioner's mother in grievance meetings for the purposes of a just cause analysis, rather than conducting a full analysis of Petitioner's rights under the statute. (*See* Compl. ¶¶ 82-85; Award at 17-18.) But the ADA did not "clearly govern[]" whether Petitioner had been terminated for just cause, *Duffy*, 2013 WL 541521, at *3, and the arbitrator's acknowledgement that her authority was limited to conducting a just cause analysis was far from "egregious impropriety," *Wallace*, 378 F.3d at 189. To the contrary, engaging in a full statutory analysis beyond the just cause inquiry would have exceeded the arbitrator's authority under the CBA and the parties' submissions.

Petitioner's claim that the arbitration award violates public policy similarly fails. Courts may only vacate an arbitration award on public policy grounds where "the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *Barnard Coll. v. Transp. Workers Union of Am., AFL-CIO, Loc. 264*, 801 F. App'x 40, 41 (2d Cir. 2020) (summary order). That is not the case here. Petitioner takes issue with the fact that he was "mandated to arbitrate his claims of discrimination." (Compl. ¶ 75.) But, as discussed above, the arbitration did not include a claim of discrimination; rather, the issue was whether Petitioner was fired without just cause. Petitioner had the opportunity to bring ADA claims in court if he wanted an adjudication of such issues. And while Petitioner is correct that "disability laws forbid discrimination," (*Id.* ¶ 77), there is no conflict between the ADA and an arbitration award finding that Petitioner was subject to termination for violation of company policy, and Petitioner

fails to explain how ACME's refusal to allow his mother at grievance meetings renders the award itself discriminatory.

Accordingly, all of Petitioner's alleged grounds for vacatur fail, and ACME's motion to dismiss is granted.

### C.     Confirmation of the Arbitration Award

"A motion to confirm and a motion to vacate an arbitration award submit identical issues for judicial determination." *Roseton Generating LLC v. Loc. 320 of the Int'l Bhd. of Elec. Workers*, No. 23-CV-2198, 2024 WL 2785053, at *6 (S.D.N.Y. May 29, 2024), *appeal withdrawn sub nom. Roseton Generating LLC v. Loc. 320 of Int'l Bhd. of Elec. Workers*, No. 24-1757, 2024 WL 4481901 (2d Cir. Sept. 25, 2024). "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *L'Objet, LLC v. Ltd.*, No. 11-CV-3856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011).

Petitioner asserts in his Opposition that Respondent's motion to confirm is untimely, as motions to confirm must be filed within one year of the arbitration award. (*See* P's Opp. at 5.) By virtue of filing the instant action, however, Petitioner waived this argument. *See Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) ("'An objection to the arbitration decision may be treated as a waiver of any objection to the timeliness of confirmation.'") (quoting *Markowski v. Atzmon*, No. 92-CV-2865, 1994 WL 162407, at *1 (D.D.C. Apr. 19, 1994)); *Maidman v. O'Brien*, 473 F. Supp. 25, 27 (S.D.N.Y. 1979) ("[W]hen a party objects to an arbitration decision on the merits, the possible untimeliness of the confirmation application has been viewed as waived."). In any event, courts treat a motion to dismiss a petition to vacate as the equivalent of a motion to confirm, *see Sanlius Devs.*, 556 F.

Supp. 2d at 332-33 (collecting cases), and here the motion to dismiss was filed on February 4, 2025, within one year of the February 26, 2024 award.

Thus, finding no grounds on which to vacate the arbitration award, the Court grants Respondent's cross-motion to confirm. *See Romero*, 2013 WL 1311033, at *4 (court should confirm absent "any statutory grounds to vacate the arbitration award").

## IV.    <u>LEAVE TO AMEND</u>

Finally, I consider whether Petitioner should be granted leave to amend, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Petitioner was already granted leave to amend, (*see* Minute Entry dated Sept. 20, 2024), and declined to do so, despite having the benefit of a pre-motion letter from Respondent explaining why the Complaint's allegations regarding public policy and the purported deficiencies in the arbitral proceedings failed, (*see* ECF No. 4). Having already had the opportunity to amend and having failed to do so, Petitioner is not entitled to another bite at the apple on those issues. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denial of amendment appropriate where court "already gave [the plaintiff] the opportunity to file an amended complaint designed to cure the very defect that remains"); *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 554 (S.D.N.Y. 2010) ("Leave to amend is appropriately denied where

the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

As Petitioner correctly points out, however, Respondent's standing argument was not raised in its pre-motion letter. (*See* P's Opp. at 6.) Nonetheless, while Petitioner claims that he would have amended his Complaint "to include the UNION or to further detail the UNION's breach of the duty of fair representation" had he been on notice of this argument, (*id.*), such amendments would be futile. *See Gabayzadeh v. Khodabakhsh*, No. 17-CV-10028, 2020 WL 1140742, at *3 (S.D.N.Y. Mar. 9, 2020) ("Granting leave to amend would be futile in a case where the amended complaint would not survive a motion to dismiss."); *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) ("Amendment is futile when the problem with a plaintiff's causes of action is substantive and better pleading will not cure it."). First, Petitioner's failure to include the Union as a defendant has no impact on the standing analysis: while an employee must establish breach of the duty of fair representation as a prerequisite to challenging the outcome of an arbitration between its employer and its union, it is not necessary to include the union as a party. *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001) ("The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both."). Second, giving Petitioner the opportunity to allege further details to establish standing would not change the outcome of the instant motion, as Petitioner's allegations as to vacatur fail on the merits regardless.

Third and finally, Petitioner has not suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. Indeed, as discussed above, the Court has taken into account the facts regarding the Union's alleged breach of its duty of fair representation that Petitioner sets forth in his Opposition, but those purported flaws in the Union's representation

fall far short of establishing a breach of the duty of fair representation.  Petitioner does not purport to have any additional facts on the subject, and it is unlikely, if Petitioner had facts sufficient to establish a breach of the Union's duty, that he would have omitted them from his opposition.  *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (a plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication the plaintiff could or would provide additional allegations leading to different result), *reh'g denied*, 645 F.3d 519 (2d Cir. 2011); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable).

        Accordingly, the Court declines to grant Petitioner leave to amend.

                                          ***

        It is unfortunate that this incident resulted in the loss of Petitioner's longtime employment.  It is unfortunate that there did not seem to be any room for compromise.  But the Court's role in this case is a limited one, and there are no grounds on which to vacate the arbitrator's decision.

## V.    **CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss the Complaint and confirm the Arbitration Award is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 11), enter judgment for Defendant, and close the case.

**SO ORDERED.**

Dated: May 20, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.